UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CUSA, LLC | : | |
|     Plaintiff | : | |
| | : | CIVIL NO.: |
| v. | : | 3:07-cv-00968 (JCH) |
| | : | |
| TRAVELERS, CO., INC.; UNITED | : | |
| STATES FIDELITY & GUARANTY CO.; | : | |
| DISCOVER RE MANAGERS, INC. | : | |
|     Defendants | : | OCTOBER 12, 2007 |

**RULING RE: MOTION TO REMAND AND FOR ATTORNEY'S FEES (Doc. No. 12)**

On May 25, 2007, plaintiff CUSA, LLC ("CUSA") filed a complaint in Connecticut Superior Court against defendants Travelers, Co., Inc. ("Travelers"), United States Fidelity & Guaranty Co. ("USF&G"), and Discover Re Managers, Inc. ("DRE"). All claims arose under state law.

The defendants responded by removing the case to federal court on the basis of diversity of citizenship, notwithstanding the fact that DRE and CUSA are both citizens of Delaware. In support of their removal, the defendants argued that DRE had been "fraudulently joined," and that its presence could be ignored. CUSA disagreed and filed a motion asking that the case be remanded to Superior Court. [Doc. No. 12] CUSA also asked for an award of attorney's fees.

The court **GRANTS** CUSA's Motion insofar as it seeks to remand the case. The court **DENIES** CUSA's Motion insofar as it seeks attorney's fees.

**I.    BACKGROUND**

The citizenship of the parties is not in dispute. Plaintiff CUSA is a limited liability

1

corporation that is a citizen of Delaware and Texas.[1]  Defendant Travelers is incorporated under Minnesota law, with its principal place of business there, and it is therefore a citizen Minnesota.  See 28 U.S.C. § 1332(c)(1).  Defendant USF&G is incorporated under Maryland law, with its principal place of business there, and it is therefore a citizen of Maryland.  See id.  Defendant DRE is incorporated under Delaware law, with its principal place of business in Connecticut, making it a citizen of Delaware and Connecticut.  See id.

CUSA's state court Complaint alleges that on September 16, 2003, "defendants issued a set of liability insurance policies to CUSA."  Compl. at ¶ 5.  CUSA's premium due under these policies depended on the amount of "Self-Funded Retention" ("SFR") that CUSA undertook.  Id. at ¶ 6.  The Complaint further alleges that on September 16, 2003, CUSA entered into a separate indemnity agreement specifically with USF&G; this agreement related to CUSA's SFR obligations.  Id. at ¶ 8.  As part of the agreement, CUSA was to provide USF&G with a letter of credit ("L/C"), which would act as security for USF&G with respect to the SFR-related insurance policies.  Id. at ¶ 9.

Because it was possible that the amount of CUSA's L/C might exceed its SFR-related obligations, the indemnity agreement specifically provided that the L/C was to be reduced annually if its amount was greater than CUSA's "Outstanding SFR

---

[1] Because CUSA is a limited liability company, its citizenship is determined by the citizenship of each of its members.  Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48, 51-52 (2d Cir. 2000).  CUSA's sole member is another limited liability company, KBUS Holdings, LLC ("KBUS").  The sole member of KBUS is Coach America Group, Inc., a corporation incorporated under the laws of Delaware with its principal place of business in Texas.  Coach America Group, Inc. is a citizen of Delaware and Texas, see 28 U.S.C. § 1332(c)(1), and thus KBUS and CUSA are citizens of these states as well.

2

Obligations." Id. at ¶ 11, 13. "Outstanding SFR Obligations" is a specifically defined term in the indemnity agreement, and part of this definition includes a requirement that certain calculations be made on an "actuarially sound basis." Id. at ¶ 14-16.

CUSA alleges that in Fall 2006, the defendants failed to make these calculations on an actuarially sound basis. As a result, CUSA believes that the defendants failed to correctly determine CUSA's Outstanding SFR Obligations, and thus failed to lower the L/C by a sufficient amount.

CUSA's Complaint asserts five claims against all defendants: 1) Breach of Contract; 2) Breach of the Implied Covenant of Good Faith and Fair Dealing; 3) Conversion; 4) violations of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a et. seq., and the Connecticut Unfair Insurance Practices Act (CUIPA), Conn. Gen. Stat. § 38a-816; and 5) Unjust Enrichment. In connection with its CUIPA/CUTPA claims, CUSA alleges that the defendants "caused to be made, directly or indirectly, explicitly or by implication, representations that were material, false and likely to mislead CUSA," including that the defendants would make the relevant calculations on an actuarially sound basis, and that the defendants would decrease the L/C when it was greater than the Outstanding SFR Obligations. Compl. at ¶ 52.

## II. FRAUDULENT JOINDER

Because CUSA and DRE are citizens of Delaware, this court would appear to lack subject matter jurisdiction. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553-54 (2005) (explaining the requirement of complete diversity). That would normally require the court to remand the case. 28 U.S.C. § 1447(c). However, the defendants believe that DRE was "fraudulently joined," and so they ask the court to

3

ignore DRE's presence in the Complaint.

To succeed in their assertion of fraudulent joinder, the defendants "must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the [fraudulently joined] defendant in state court." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). As the defendants acknowledge, this standard is more rigorous that the standard the court would apply in evaluating a simple motion to dismiss. Indeed, defendants bear "a heavy burden [in] proving fraudulent joiner, and all factual and legal issues must be resolved in favor of the plaintiff." Id.

As an initial matter, there is no indication that CUSA's pleadings involve "outright fraud." Although the defendants suggest that DRE has "no real connection to the controversy," Defendants' Opp. to Plaintiff's Mot. for Remand at 1, CUSA has offered evidence to the court that demonstrates otherwise. Specifically, CUSA has submitted emails from DRE in which DRE refuses to reduce the L/C amount to the level that CUSA believes is appropriate. CUSA has also submitted evidence that DRE was involved in the procurement of the relevant insurance policies.

The defendants also argue that none of CUSA's claims against DRE have any possibility of success. But this is a difficult argument to make; if even a single claim has a possibility of success against DRE, DRE was not fraudulently joined in this litigation. Here, CUSA's Complaint could reasonably be understood as stating valid CUIPA and/or CUTPA claims against DRE.

The defendants' first argument on the CUIPA/CUTPA claims rests on two related

4

premises: 1) CUSA cannot obtain relief on its CUIPA claim because any misrepresentation by DRE concerned only an agreement relating to insurance, not an actual insurance policy; and 2) the failure of a CUIPA claim against someone in the insurance industry necessitates a finding that the CUTPA claim fails as well.

Even assuming that the defendants are correct in their first premise, it is not at all clear that the defendants will succeed in the second step of their argument. To support their contention that CUIPA and CUTPA claims stand or fall together, the defendants rely on Mead v. Burns, 509 A.2d 11 (Conn. 1986), and several unreported Superior Court cases that cite Mead. See, e.g., Heyman Assocs. No. 1 v. Ins. Co. of the State of Pa., No. 397987, 1993 Conn. Super. LEXIS 541 at *28 (Conn. Super. Ct. Feb. 24, 1993) ; Peterson v. Allstate Ins. Co., No. CV 90 9387142, 1992 Conn. Super. LEXIS 2696 at *7-10 (Conn. Super. Ct. Sept. 17, 1992). Yet these cases are readily distinguishable. In Mead and the Superior Court cases that rely on it, the CUIPA claims failed because the conduct complained of was not <u>unfair</u> under CUIPA. The courts then used this fact to conclude that the same conduct could not be deemed unfair under CUTPA.[2] Here, however, CUSA's CUIPA claim allegedly fails for a different reason: the fact that misrepresentations by DRE did not involve an insurance contract. This distinction creates uncertainty surrounding defendants' argument against CUSA's

---

[2] A possible exception is the Superior Court's decision in Precision Mechanical Services, Inc. v. T.J. Pfund Associates, Inc., No. CV980416692S, 2003 Conn. Super. LEXIS 3532 (Dec. 22, 2003), which contains dicta that is arguably on point with defendants' argument. But Precision relies on Mead as its authority, and it is not at all clear that Precision has read Mead correctly. See id. at *32-35. Dicta in an unpublished Superior Court opinion does not provide sufficient authority to show that CUSA has no possibility of success on its CUTPA claim.

5

CUTPA claim, and that uncertainty must be resolved in CUSA's favor.[3]

The defendants also present a second theory as to why plaintiff's CUIPA and CUTPA claims fail. They argue that CUSA has alleged no more than a simple breach of contract, which they further contend is inadequate to state a CUIPA/CUTPA claim.

In Boulevard Assocs. v. Sovereign Hotels, 72 F.3d 1029, 1038-39 (2d Cir. 1995), the Second Circuit agreed with the "vast majority" of Connecticut courts which have held that mere contract breach cannot establish a CUTPA claim. Yet while Boulevard binds this court, it does not bind the Connecticut state courts. And notwithstanding Boulevard, the Connecticut courts have been somewhat ambiguous as to whether mere breach of contract can suffice to state a CUTPA claim. See 12 Langer et al., Connecticut Practice Series § 4.3 at 192-93 (2003) (discussing an apparent schism in the Connecticut case law); Lester v. Resort Camplands Intl., Inc., 605 A.2d 550, 556-57 (Conn. App. Ct. 1992) (appearing to state that breach of contract is actionable under CUTPA); cf. Boulevard, 72 F.3d at 1038-39 (implicitly acknowledging that Connecticut courts are split on the issue). This distinction is important because the plaintiff's claims must be judged by how they would fare in state court, not by how they would fare in federal court. See Pampillonia, 138 F.3d at 461. It thus seems difficult to say that CUSA's claims would have no possibility of success in the state courts.

In any event, and as the defendants acknowledge, suits which allege more than

---

[3] The court doubts that the Connecticut would adopt the defendants' view of the relationship between CUIPA and CUTPA. If the defendants were correct in their understanding of the statutes, Connecticut would have a bizarre gap in its regulatory scheme: entities in the insurance industry would have a special license to engage in unfair trade practices so long as the unfairness was not directly related to an insurance agreement.

a simple breach of contract can come within the ambit of CUTPA.  Consistent with this, if a defendant's misrepresentation induces the plaintiff to enter into a contract, and the contract is later breached, that misrepresentation may be an aggravating factor that suffices to state a CUTPA claim.  See Tinian Trust Holdings v. Int'l Paper Co., No. CV054007049S, 2005 Conn. Super. LEXIS 2183 at *12-13 (Conn. Super. Ct. Aug. 12, 2005) (collecting cases).  Indeed, there is reason to think that a plaintiff could maintain a CUTPA claim merely for representations that the defendant should have known were false, even if the defendant was not actually aware of the falsity of its representations.  See Web Press Servs. Corp. v. New London Motors, Inc., 525 A.2d 57, 67-68 (Conn. 1987) (explaining that, as a general matter, a CUTPA plaintiff need not prove that any misrepresentations were knowingly false if there is evidence that the defendant's actions otherwise constituted a deceptive practice).

CUSA's Complaint alleges that DRE made representations that were "material, false[,] and likely to mislead CUSA."  Read in context, this language could be understood as an allegation that DRE made multiple representations to CUSA that DRE should have known to be false, and that were intended to induce CUSA into entering into the indemnity agreement.[4]  Based on these allegations, and based on the uncertainty in Connecticut's CUTPA case law, the court concludes that the defendants cannot clearly and convincingly show that CUSA has no possibility of relief in state court.  Therefore, the case must be remanded to state court.

---

[4] This is certainly not the only way to read the Complaint, but the court must resolve any ambiguity in CUSA's favor.

## III. ATTORNEY'S FEES

In addition to seeking a remand of the case, CUSA argues that it is entitled to its "actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Absent unusual circumstances, however, CUSA may only recover attorney's fees if the "removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). The court retains discretion to consider if unusual circumstances are present. Id.

Here, the defendants had an objectively reasonable basis for removal. First, CUSA has not argued that any of its non-CUIPA/CUTPA claims has any traction against DRE. See CUSA's Mot. to Remand at 4-7. Second, although CUSA's Complaint could be read to allege sufficient facts to state a CUIPA/CUTPA claim against DRE, the allegations of wrongdoing were sparse. It was not unreasonable for defendants to think that the Complaint alleged facts that were clearly insufficient to maintain a CUTPA claim.

CUSA has not argued that there are special circumstances otherwise warranting a fee award. The court denies CUSA's motion for attorney's fees.

## IV. CONCLUSION

CUSA's Motion [Doc. No. 12] is **GRANTED** insofar as it seeks to remand the case to Superior Court, and **DENIED** insofar as it seeks attorney's fees.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 12th of October, 2007.

                                        /s/ Janet C. Hall
                                        Janet C. Hall
                                        United States District Judge